Good morning, Your Honors. Kurt Hermanson on behalf of Mr. Slovik, the appellant in this case. May it please the Court, there are two reasons why reversal is required in this case. The first is that the key witness and so-called victim, Mr. Featherstone, was allowed to say to the jury that he was not on probation. Let me ask you some questions about this Confrontation Clause issue with Featherstone. You phrased it, I think, as Confrontation Clause, is that right? And as due process. And due process. It looked to me as though what happened was that Featherstone is involved in this bar fight and making himself out to be the victim, and Slovik wants to make himself out to be the victim of this very rough fellow, Featherstone. So Featherstone testified, and there wasn't any knowing putting on a perjury by the government, so you don't have that misconduct. Featherstone lies. People lie a lot in trial. We're assuming for purposes of this discussion he was lying. And then Slovik cross-examines. So there can't be a denial of the right to confrontation because he did confront. He looked them in the eye and asked them, aren't you under probation? And then Featherstone lies. It seems to me that the issue here is not confrontation at all. It's 608B. As I recall, I really recall common law evidence better than I recall the rule. You can't use extrinsic evidence to prove mere adverse credibility against a witness. You can cross-examine a witness to show that he's lying, but generally if it's a collateral matter, you can't use extrinsic evidence. This is just a vague memory of the common law rule, so correct me on why that doesn't apply. Well, just to put it in context, of course this is a criminal case. But it's not a confrontation clause problem. In other words, it's an extrinsic evidence problem. It's more of a due process problem. And to put it in context, we're dealing, of course, with a criminal case and the defendant's constitutional right to a fair trial. And that right to a fair trial encompasses the right to effectively cross-examine. Why doesn't the extrinsic evidence – well, you could cross-examine Featherstone all you like, couldn't you? It was just a matter of getting extrinsic. What evidence did you want to put in, incidentally, that you weren't allowed to put in? Well, his attorney – I wasn't the trial attorney, but his attorney at trial had proof that he was on probation. What proof? A document? Yeah, I think it was the judgment, which would come in. So cross-examination was permitted. The lawyer just was not allowed to use the extrinsic evidence of the document? He was permitted to – it was greatly tailored, and he was tubed. I mean, he wasn't really allowed to cross-examine someone. Cross-examination isn't just having someone understand. When you say the words really and due process, you're raising the discussion to a level of generality that makes it harder for me to understand the argument. Because I'm thinking more in terms of confrontation clause, which is more specific, and 608B, which is more specific, and I really need help on them. Right. Well, this was a state court trial, so 608B doesn't come into play. But the bottom line is – Doesn't California have some analogous extrinsic evidence rule? Yes, but – Usually they have this 1850 or so codification that's pretty much common law. But, Your Honor, when we're talking about being able to cross-examine someone in a state court criminal trial, it means that you can't let the witness get on the stand and lie and get away with it. So even if it were a hearsay or there's some kind of exception, there's clearly established United States Supreme Court law that says even if – No, no, they can get away with it if there are limitations on just how much of a trial within a trial you can have about the witness instead of the defendant. And that's always the issue with extrinsic evidence. And in this case, it went to the heart of the defense. You know what I'm talking about on the extrinsic evidence rule in 608B. Right, but I see that as not the issue in this case. I mean, the issue is whether or not fairness and due process allows someone to cross-examine someone and show the jury the truth of the matter. But he got to cross-examine him. And he got to lie and get away with it. Well, when you say get away with it, I think what you're saying is the defense got to cross-examine the witness all it wanted, but it was not permitted to use extrinsic evidence to prove that the witness was lying. But you can't say that someone is allowed to cross-examine someone all they wanted when the judge – they did a sidebar, which was off the record. Cross is asking questions. Until the judge shuts you off and doesn't let you ask any more questions. That's not fair cross-examination. Counsel, what incentive would Featherstone have had to lie about his probation status? He – if he had admitted that he threw the ball, that he was involved in the fight and was actually one of the aggressors in the fight, he would have violated probation. And by violating probation, obviously he's going to be put in custody. His suspended probationary sentence then would have – What was his suspended probationary sentence? I don't know. It was a DUI, so it wouldn't have been very much. Are we talking 90 days? Are we talking a year? I don't know. I don't know how much time he would have gotten. Now, if you had – the judge ruled that – the trial judge ruled that the probation was irrelevant to his testimony and that he thought that the evidence of the probation would have been outweighed by other considerations. He would not have allowed it. If defense counsel had gone to the trial judge and had said, judge, I'm thinking we're going to put this guy on and I'm going to ask you about his probation, the judge would have said, no, you can't do that. So this evidence would not have come in at all. Is that correct? I'm not sure I understand the hypothetical. He was the government's witness. If the government – right. But if the government had said, we're going to cross-examine – we're going to put this guy on. But we want an understanding in advance that the evidence of his probationary status as a result of his DUI is not relevant and therefore out of bounds for cross-examination. That would have been a purely evidentiary ruling by the district court and it was clearly what the district court thought. Are you with me on that so far? Yeah, the trial – Right. You've been excluded. Now, the bottom line is the government didn't press that. And trial counsel for the defendant asked him right out of the gun, have you been convicted of a crime? And he lies on the stand. No, I have not. At that point, you then have the sidebar as to whether you can bring in the evidence of conviction to show that he's just uttered a lie in the first answer that he's given to defense counsel. Right. And I think this goes back to Judge Kleinfeld's question about extrinsic evidence. And that – just so it's clear, the record doesn't have any – the judge did not exclude it on that basis. He excluded under 352, which is the balancing of probativeness versus prejudice. And what the judge really got wrong was – That's the equivalent of federal rule 403? Yes. It's very similar to 403. But – and so the judge – but he didn't do it under probativeness versus prejudice. He said cumulative – waste of time. He said it would have been a waste of time. And that's what is really outrageous about this case, to say that it's a waste of time to allow a criminal defendant to effectively cross-examine someone who has just perjured himself and lied and is a key witness. The question – how were – was the issue whether you could take the judgment and further question the witness and say, well, look, isn't this a judgment that put you on probation? It would have been one simple question so that the jury, instead of being left with the impression that he's not on probation and that he's law-abiding, just one question, isn't it true that actually you are on probation, that you just lied? Yes, it's true. Then the jury would have – Okay, but was that question asked in objection? It wasn't – it wasn't – he wasn't allowed to ask. They had to go sidebar, and the judge said that he wouldn't let him ask. I see that I have to sum up, but I really want to get to the jury instruction issue. I hope the presiding judge will give you some additional time. I have one other question I would like to ask about this, and that is – and that is this. If we thought that your client had been deprived of due process in this trial, what remedy do you want? Do we send this back to the district court for findings on the harmless error problem, or do we decide that ourselves? This court decides. Why would we decide it? Because under – for both issues, harmlessness is before this court, because the clearly established United States Supreme Court law that I'm relying on, Delaware v. Van Arnstall, is on this issue of whether you can effectively impeach someone. And Delaware v. Van Arnstall at 475 U.S. at 678-679, which is on page 12 of the appellant's opening brief, that case talks about the balancing that this court would do in looking at whether or not his due process rights were violated. Similarly, with the jury instruction issue, under Estelle v. McGuire and Winship, the court looks to whether or not the jury was told of all the elements. In this case, there's clear, clear reversible error because what the judge did was give two jury instructions, one on battery that said the government must prove beyond reasonable doubt that it wasn't self-defense, putting the burden on the government. The verdict on the battery charge was not guilty as to Featherstone. So when the jury was properly instructed, and when they were told that the government had to prove beyond reasonable doubt that it wasn't self-defense, they acquitted. But when the jury was improperly instructed in the assault instruction, for some bizarre reason, the judge decided, first started reading and first started saying he was going to give it, and then just on his own decided, I'm not going to give the self-defense burden. Was anything else going on in court? I couldn't understand the judge's phrase. He reads it, and then he says, I'm going to strike that. I didn't understand what he meant, and sometimes that's because something else is happening in the courtroom that isn't clear from the record. I'm completely baffled. There's nothing in the record to indicate why the judge did this, but he doesn't put the burden on the government. And so when the jury, as jurors are likely to do,  you have to look at the entire context of the instructions, and the government's trying to, you know, do the shell game and say, oh, look at all these instructions that were given on self-defense. Well, when you really look at the instructions that were given on self-defense that relate to the elements of the offenses, the one on battery, not guilty, has the burden on the government. The one on assault doesn't have any burden on the government, and this is the one that he's convicted on, and this is the one that resulted in 35 years to life. And that clearly is a violation of his right to due process and should result in a reversal of the conviction. Just as this court found in Sanchez-Lima, that is reversible error. Thank you, counsel. Even though you went over, we'll give you one minute for rebuttal. Thank you, Eric. May I please support Garrett Beaumont for appellee? Regarding issue number one, as was noted, the state court did not prevent Slovic from cross-examining Featherstone. In fact, it was a lengthy cross-examination. It doesn't let him ask him about what he's just lied about. There's no question that Featherstone lied, right, in the first question that he was asked. Oh, there is a question that he lied, because the question was, are you currently on probation for anything? When Featherstone said no, you could just as easily say he was mistaken. Well, let's imagine that. I don't know if it even matters. My FedEx has my materials in Memphis right now, so I'm a little lost here. Could you explain to me just what it was that defense counsel wanted to ask Featherstone after Featherstone said no, just what it was that defense counsel wanted to show Featherstone or introduce as an exhibit, and why the judge wouldn't let him? He had a document showing that he represented Featherstone was currently on probation still for a DUI conviction. Did the defense offer it as an exhibit?  So he just wanted to hold it in his hand and ask Featherstone, isn't it true, that question? Right. And the judge wouldn't let him ask him, isn't it true, that question? Right. Now, does California have something like the extrinsic evidence rule, and if so, what's its form? You cannot impeach a witness on a collateral matter. You cannot ask him about a collateral matter. With extrinsic evidence? Yes. Now, the way you usually evade that rule when you're trying to do it, evade it legally, I mean, is you ask an isn't it true, that question, and wave your document around, which you can't get in, because then it's not extrinsic. You're just cross-examining. You're just cross-examining, yeah. So why shouldn't he be allowed to hammer the guy on saying no, he's not on probation, when actually he is? Well, under 352, this is a collateral matter for several reasons, according to the judge, and I think correctly so, because the prosecutor at that out-of-jury conference explained that he never represented, he never discussed Featherstone's criminal background with him, and there was never any offer for Featherstone or any threat for Featherstone that they were going to revoke his probation, or he had to testify. So what? The guy's not an idiot. He knows perfectly well that he shouldn't have been in that bar drinking when he's on DUI probation. Either the prosecutor likes him or he's in trouble. Well, he was drinking no matter what his testimony was, and he acknowledged he was drinking. Right, but if he gets in a fight and it turns out that he's the aggressor rather than the victim, then that has some implications for Featherstone. In other words, Featherstone's got some motive here to lie, to misrepresent what happens at the bar fight, and he's asked the first question out of the box by defense counsel, and he lies. And defense counsel is then hamstrung. He can't prove. The trial court won't let him show that Featherstone lied about that. Well, it's a minor point. It wasn't the first question out of the box. It was near the end of, I believe, his street cross-examination. So what? He went through two cross-examinations of Featherstone before he asked for the in-limited cap. Look, you're talking about stuff that doesn't matter. If the prosecutor goes back to the office grumbling, I lost the case, Featherstone went south on me, whoever had Featherstone on the DUI may say, oh, well, we can nail him just because he was in that bar. We don't have to prove anything except he was in a bar. Right. Because it's probably a violation of a condition. Right. And Featherstone has a – And it doesn't matter when it was in the cross. But I think regardless – How important was Featherstone in proving that Slovik was throwing pool balls? Well, I think all the witnesses or the majority of the witnesses who testified that Slovik was throwing the cue balls, Featherstone was one of them that testified that Slovik was throwing the cue balls, not the only one. Or, excuse me, Featherstone. Featherstone was the one that said Slovik was throwing the cue balls at him. The other two witnesses, well, Woods and Buckley Stovall and Lewis, were testifying also that Slovik was throwing the cue balls,  I thought it was one table. Usually there's one cue ball and a bunch of other colored balls. Well, there were three cue balls – or pool balls. Let's call it pool balls then. I don't know the difference between cue balls and the other balls. Yeah, pool balls. You're not drinking enough beer in saloons. Pardon? You're not drinking enough beer in bars. One of our deputies just retired. If we thought that the trial court had incorrectly and perhaps unconstitutionally deprived defense counsel of the right to cross-examine Featherstone, what remedy would the state like us to pursue? Do we need to send this back to the trial court for questions as to whether this is harmless error or do we decide that ourselves? Well, to be frank, I think you decide that yourselves. I think the district court decided that themselves. Whether there was a constitutional violation or whether it was harmless. Well, they didn't get to the question of harmless error because they found there was no constitutional violation. Yeah, and when you look at whether or not it was a constitutional violation, the two questions are pretty close. But there would be nothing, I don't think, stopping you if you wanted to remand it back to the district court for that. Is there a point to it? I mean, we reviewed de novo. Right. To be honest, I can't think of a point to it at this point because the issue was raised, obviously, in the district court and in the state appeals as well. But, again, I encourage you, and it's in the excerpts of the record, to read the cross-examination of Slovik, which is lengthy. But it is established after Slovik said no, the lawyer was not allowed to ask him, and isn't it true that question about the document that would prove that he was, in fact, on probation? Yes, but he said no to are you on probation for any particular crime. So, I mean, a lie is putting it really strong. I think he might not have known he was still on probation. He might be on and off probation so often he doesn't even know at the moment whether he is or not. Well, he can say that, of course. If the document tells him, he can say, well, yeah, I was mistaken. I thought that expired last week or something. But maybe he shouldn't have to give that explanation. Again, the three other witnesses were impeached with probation, Vietnam probation. They all knew each other. They were all regular patrons. The jurors knew that none of these witnesses for the prosecution was coming from a Sunday school choir. They weren't under any misimpression about, you know, whether they're upstanding citizens or not. And I think the cross-examination of Featherstone was thorough with or without the probation. Well, if I'm Featherstone, I really want that prosecutor to leave the courtroom saying, I owe you one. I don't want the prosecutor to leave the courtroom saying you went south on me. Well, again, I think that's speculation. I mean, I really – I think it was women judges' province to rule the way he did. By the way, when he made the ruling, he was – the grounds was that it would – it wasn't particularly probative and it would confuse the issues more than clarify them. Let me ask you something about the instructions before we run out of time. Is it true that the jury was given the government's burden? Well, let me phrase it differently. What was the judge talking about when he said, I am going to strike that? What I think he was talking about – I think the best explanation for what he was doing is he knew that the self-defense instructions applied to both crimes, and he was waiting to give them all at once. So after he – so he decided, what I'm going to do is this. I'm going to give him the positive elements of both crimes, and then I'm going to give him the self-defense. Did he ever say in so many words, the government has the burden of proving that the defendant did not act in self-defense? And did he say that this applies to all the crimes charged? Well, he did say it applies to all the crimes charged, but that's the only way you can read the instructions. Could you give us the words? Minor in Memphis. Pardon? Minor in Memphis, Tennessee with FedEx. Yes. Give us the words. All right. I'd also like to talk about the fact that this wasn't even a self-defense case. Could you give us the words anyway? Right. Right. And I will. Okay, self-defense, self-defense, self-assault. Okay, the use of force or violence is not unlawful. What are you reading from? This is from ER 65. The use of force or violence is not unlawful, undone lawful self-defense. The burden is on the people to prove that the use of force or violence was not unlawful self-defense. If you have a reasonable doubt the use of force or violence was unlawful, you must find the defendant not guilty. That is the clerk's transcript version. The reporter's transcript version is the same. But the reporter's transcript version, which is two pages separate the assault crime from the full self-defense instructions, you know, it doesn't say this is limited to battery. What the defendant doesn't, what Slovik doesn't like is the clerk's transcript, the self-defense instructions begin under the battery instruction. So it looks like they're separated. But you read the instructions as a whole and it's absolute nonsense to construe it that way. No reasonable juror would construe it that way. In the reporter's transcript, you're saying that it wasn't given just as part of the battery instruction in there. No, it was, but they don't give you, okay, title instruction, battery, Calgic 16-140. They don't say that in the reporter's transcript. I mean, the body of the instructions are word for word clerk's and reporter's transcripts. But when you hear it, the self-defense begins after the affirmative elements of battery. You started to say a minute ago that this wasn't a self-defense case anyway. No, there was absolutely no self-defense to assault. And the only reason, well, first of all, this was not a self-defense case. The prosecutor appropriately argued that this case is about an angry man who went back into a bar to get even after being kicked out of the bar in the early hours of the morning. All the witnesses described Slavik as angry and belligerent when he was forced to leave the bar and angry and belligerent when he forced his way back into the bar, including all the witnesses, including Bridget Lewis. You're saying maybe that the evidence was in your favor on the issue of self-defense, but I didn't know whether you were saying that self-defense was never even raised as a defense. It was raised, but there was absolutely no evidence, nothing whatsoever of self-defense, and I'll tell you why. Even Bridget Lewis, the only one who claimed Featherstone threw a cue ball, claimed Featherstone threw the cue ball, and this is rereading her testimony, after Slavik threw his cue balls as Slavik was heading towards the door. Now, the instructions, Calgary instructions, and the ones read by the trial court say, an assault with fists or feet does not justify the person assaulted in using a deadly weapon in self-defense. Did Slavik testify? Unless a reasonable person would believe the assault was likely to inflict great bodily injury on him. So even if... Did Slavik testify? No. So even if Featherstone knocked Slavik down and kicked him, and then Slavik got back up, as Lewis testified, Slavik had no self-defense to pick it up with a cue ball and throwing it at him. Aren't boots sometimes deadly weapons? That... We had an Alaska case about kicking somebody with boots, and they were a deadly weapon. I don't know if California's had a case about it. Well, that goes to another instruction that was given by the trial court appropriately. The right of self-defense exists only so long as the apparent threat and danger continues to exist. Both of them had gotten up, and Slavik was chasing... threw the cue balls at Featherstone across the pool table. He was... All the witnesses unanimously said that Slavik was an angry guy. He was forced his way back into the bar in revenge, and he threw those cue balls through the wall, and they were all terrified of him. This wasn't self-defense. Thank you, counsel. The battery acquittal was because there was no evidence that Slavik ever touched Featherstone, or ever hit Featherstone, and Slavik conceded the battery of Buckley Stovall. So Slavik was convicted of battery of Buckley Stovall and acquitted of assault. Was the assault charged for assault of Featherstone only? No, it was for assault of both of them, and he was acquitted of the assault of Buckley Stovall. Thank you. Thank you, counsel. Your Honor, I have an extra copy of the E.R. if you'd like it. Oh, I'll have it by this afternoon probably. To address what the government has just said, I mean, I don't like to use words like this, but I think it's really outrageous to say that they were instructed that the government had the burden of proving the unreasonable doubt that it wasn't self-defense. I mean, that is just not true. There's only one place. There are many instructions on self-defense in this case, but there's only one place where it says that the burden is on the government, and that's in the battery instruction. And the way that the court ---- The way what you're showing us, what it looks like is the judge marks up a set of instructions and gives it to the clerk, and the clerk files it in the record. And then the court reporter does a transcript in Alaska. It's from a tape. I think in California they sometimes do it live of what actually happens during the courtroom testimony. They use those machines and ---- Right. May I approach just to show you ---- Just tell us. It's not just me, and it makes a bad record. Just tell us. Well, Your Honor, Excerpt of Record 65 is the physical instruction. So if the court looks at Excerpt of Record, it's actually Volume 2. So 2ER, 64, and 65 show beyond a reasonable doubt that this is what the jury was given. They're given written instructions. They were told this orally, where the judge refused to tell them that the burden was on the government, orally. And then in writing, this goes back to the jury, and they look at these, and they compare these. And they're sloppy. It's not very well done. Do they give them to the jury? This is given to the jury. This goes back into the jury room with these cross-outs where he's crossing things out. And one of them says battery at the top. One of them says assault at the top. The one that says assault, 2ER, 64, doesn't say one. Look, are you sure they're given to the jury? I absolutely doubt it. The former California Superior Court judges have told me that they don't do that. They just read them. And I know it can vary from judge to judge. I've never had a trial where it didn't go back to the jury. Is it in the record that this was given to the jury? Are you basing this on your experience of sort of extrapolating it back, or is there something in the record that indicates? I would have to look for it. In your experience, these are given to the jury. Absolutely. Well, we're not sure whether, in fact, they were given to the jury in this case on the basis of the record. I can do a 28-J letter on that. We'll let you know if we want you to supplement. Okay. I mean, I have no doubt that it went to the jury. I can't give you a cite right now. But volume 2ER, 64, shows that they were not told that the burden was on the government. And on the battery charge where they acquitted, they were told. With the battery, not separate, as the government's implying. This is in the battery instruction and only in the battery instruction. That's the only time they're ever told that the burden's on the government to disprove self-defense. So, obviously, the jury, seeing these instructions, is going to acquit on battery and not on assault because self-defense doesn't – the burden's not on the government. I guess it could also acquit on battery because when he threw the pool ball at Featherstone, he missed. Right. We don't know. We don't know why they acquitted on battery. But I think it's really strong evidence that it made a difference. And as far as the testimony, there was testimony that Featherstone pushed, kicked, and threw one of the balls at Slavik. There was also testimony that Johnson put him in a chokehold outside in the parking lot. So this is a factual issue that a jury would decide, not this Court. But there was definitely evidence of self-defense. And the question – and, yes, he threw cue balls. But the question is, was it in self-defense? That's really the question. So although there was testimony from various witnesses that cue balls were thrown, one witness said Featherstone threw a cue ball. Pool balls, you mean? These guys, they're not just throwing the white balls, right? They're throwing whatever balls – Stripes and solids as well. Unless there are multiple tables, you're right. It's a billiards ball or – they may have been colored balls. I don't – I think they did call them cue balls in the record. But I agree with the Court. They're probably – Featherstone was striped and Slavik was solids. Yeah, perhaps. Okay. Yeah. Yeah. I mean, it may have just been good fun. And this – I'd just like to close on saying that, you know, the government saying that, oh, well, they didn't think that these witnesses were members of a choir or choir boys or whatever, really misses the point. Yes, they're all hanging out at a bar, and they're drinking and violating probation. The point is that he got on – that Featherstone got on the stand and lied to the jury. If the jurors found out that he lied to them, I think that would have made a difference in their mind in whether or not they believed his testimony. Thank you, counsel. Thank you, Your Honor. Slavik v. Yates is submitted.
judges: Canby, Kleinfeld, Bybee